**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-3324-WJM-KMT

LORELLE THOMPSON;

    Plaintiff,

v.

FORD MOTOR COMPANY, a Delaware company,

    Defendant.

---

## ORDER GRANTING MOTION TO DISMISS

---

In this action, Plaintiff Lorelle Thompson ("Plaintiff") brings various claims against Defendant Ford Motor Company ("Ford"). (ECF No. 1.) Before the Court is Ford's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) (the "Motion"; ECF No. 8). For the reasons set forth below, the Court grants the Motion and dismisses the case without prejudice for lack of personal jurisdiction.

## I. FACTUAL & PROCEDURAL BACKGROUND

On December 27, 2016, Plaintiff drove her 1998 Ford Expedition (the "Vehicle") to her community mailbox, located near her home in El Paso County, Colorado. (¶¶ 24–26.)[1] Upon arriving, Plaintiff put the Vehicle into park and left the engine running. (¶ 26.) Plaintiff then opened the Vehicle's door and stepped out. (*Id.*) When she stepped onto the ground, she slipped and fell on her back, with her left leg positioned behind the Vehicle's front left wheel. (*Id.*) The Vehicle then "unexpectedly

---

[1] All "¶" citations, without more, are to the Complaint (ECF No. 1).

self-shifted into powered reverse and began to roll backwards." (*Id.*)  The Vehicle rolled over Plaintiff's left leg, resulting in fractures to her tibia and fibula.  (¶¶ 26–27.)

Plaintiff alleges that the Vehicle unexpectedly shifted into reverse due to a "park-to-reverse" defect in the Vehicle.  The following is Plaintiff's description of the defect:

> A "park-to-reverse" defect can exist in a vehicle equipped with an automatic transmission when there is inadequate mechanical force . . . to ensure that a vehicle always defaults into an intended gear position (such as park or reverse) when an operator inadvertently does not fully shift into the very center of the intended gear position.
>
> In a vehicle with a park-to-reverse defect, an operator of the vehicle in normal use can inadvertently and unintentionally place the shift selector *between* the intended park and reverse gear positions.  Rather than defaulting into the park or reverse gear position, as it would in a properly designed vehicle which meets industry standards . . . , the shift selector can remain for a period of time (several seconds or longer) *between* the intended park and reverse gear positions and from this "false park" position the vehicle then may (or may not) have a delayed engagement of powered reverse.

(¶¶ 33–34 (emphasis in original).)  Plaintiff alleges that Ford failed to, *inter alia*, design its vehicles to prevent the "park-to-reverse" defect despite prior notice of the flaw, install out-of-park alarms on all of its vehicles susceptible to park-to-reverse problems, and properly test its vehicles' transmission systems.  (*See* ¶¶ 33–48.)

Plaintiff filed this lawsuit on December 26, 2018, asserting state law tort claims against Ford for (1) strict products liability (¶¶ 54–65); (2) "negligence, gross negligence, willful and wanton misconduct: design defect" (¶¶ 66–72); (3) "negligence, gross negligence, willful and wanton misconduct: manufacturing defect" (¶¶ 73–80); (4) failure to warn (¶¶ 81–88); (5) breach of implied warranty (¶¶ 89–98); and (6) fraud

(¶¶ 99–108). (ECF No. 1.)

Plaintiff is an individual and a resident of El Paso County, Colorado. (¶ 5.) Ford is a Delaware corporation with its principal place of business in Michigan. (¶ 6.)

On January 18, 2019, Ford moved to dismiss Plaintiff's claims against it for lack of personal jurisdiction. (ECF No. 8.) Plaintiff filed a response to the Motion ("Response"; ECF No. 17), to which Ford replied (ECF No. 21).

## II. LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

"The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id*. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

At this stage, the Court accepts the well-pled (that is, plausible, non-conclusory,

and non-speculative) factual allegations of the complaint as true to determine whether Plaintiff has made a *prima facie* showing that personal jurisdiction exists. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Any factual conflicts arising from affidavits or other submitted materials are resolved in Plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### III. ANALYSIS

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). Because Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, "confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070. Thus, the Court need only address the constitutional question of whether the exercise of personal jurisdiction over the defendant comports with due process. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

"In order to evaluate whether the exercise of personal jurisdiction comports with due process, [the Court] must first assess whether 'the defendant has such minimum contacts with the forum state that he should reasonably anticipate being haled into court there. This minimum-contacts standard may be satisfied by showing general or specific jurisdiction.'" *Niemi*, 770 F.3d at 1348 (quoting *Emp'rs Mut. Cas. Co. v. Bartile*

4

*Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010)). "[I]f the defendant has minimum contacts within the forum state, [the Court must] determine whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Bartile Roofs*, 618 F.3d at 1160 (internal quotation marks omitted).

Plaintiff avers that the Court has both general jurisdiction and specific jurisdiction over Ford in the District of Colorado. (¶¶ 12–13; *see generally* ECF No. 17.) The Court will address each contention in turn.

## A.    General Jurisdiction

"[A] court may assert [general] jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Absent exceptional circumstances—where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State"—a corporation is only at home in its State of incorporation and principal place of business. *Daimler*, 571 U.S. at 137–39 & n.19 (citing *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952)); *see also AK Steel Corp. v. PAC Operating Ltd. P'ship*, 2017 WL 3314294, at *3 (D. Kan. Aug. 3, 2017).

Here, it is undisputed that Ford is a Delaware corporation with its principal place of business in Michigan. (¶ 6; ECF No. 8-1 at 1, ¶ 4.) Plaintiff does not allege—nor

does the record support a finding—that this is an exceptional case where Ford's operations in Colorado are so substantial and of such a nature as to render Ford at home in Colorado. *See Daimler*, 571 U.S. at 123, 139 n.19 (finding that "Daimler's activities in California plainly do not approach" the level of an exceptional case even though Daimler had multiple facilities and a regional office in California, and was the largest supplier of luxury vehicles in California); *see also Magill v. Ford Motor Co.*, 379 P.3d 1033, 1038 (Colo. 2016) (finding that Ford's contacts in Colorado "pale in comparison to the significant contacts that were deemed 'slim' in *Daimler*").

Because Ford is incorporated in Delaware and has its principal place of business in Michigan, Plaintiff has not demonstrated that Ford is "essentially at home" in Colorado. *See Magill*, 379 P.3d at 1039 ("Nothing about Ford's contacts with Colorado suggest that it is 'at home' here. Moreover, no special circumstances . . . indicate that this is an 'exceptional case' that would render Ford at home in Colorado."). As a result, the Court lacks general jurisdiction over Ford.

**B.     Specific Jurisdiction**

"A specific jurisdiction analysis involves a two-step inquiry." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). "First [the court] must consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "Second if the defendant's actions create sufficient minimum contacts, [the court] must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair

6

play and substantial justice." *Benton*, 375 F.3d at 1075 (internal quotation marks omitted).

    1.    <u>Minimum Contacts Standard</u>

The "'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472).

Ford argues that Plaintiff cannot satisfy the second inquiry. (ECF No. 8 at 11.) Thus, the Court will focus on whether Plaintiff's injuries arose out of Ford's forum-related activities.

    2.    <u>Ford's Affidavit</u>

Ford attached to the Motion an affidavit ("Affidavit"; ECF No. 8-1) by Matthew Fyie, a Design Analysis Engineer in Ford's Automotive Safety Office. (*Id*. at 1, ¶ 2.) Because the Affidavit is essential to the Court's analysis of the second prong of the minimum contact's inquiry, the Court will address the factual allegations contained in the document before analyzing whether Plaintiff's injuries arose out of Ford's forum-related activities.

It is important to first note that while the "allegations in the complaint must be taken as true," this is only so "to the extent they are uncontroverted by the defendant's affidavits." *Behagen*, 744 F.2d at 733. But "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor." *Id*.

In the Affidavit, Fyie avers that Ford does not have any manufacturing plants in Colorado and that the Vehicle was designed, developed, and assembled in Michigan.

(ECF No. 8-1 at 2, ¶¶ 5–6, 8; *see also* ECF No. 8 at 2–3.) Fyie also states that Ford did not sell the Vehicle in Colorado, but instead sold the Vehicle to an independently-owned dealership in Florida in 1998. (ECF No. 8-1 at 2, ¶¶ 5, 7; *see also* ECF No. 8 at 2–3.)

Ford also submitted exhibits in support of the Motion—namely, the Vehicle's Title History Report (ECF No. 15-1) and CARFAX History Report (ECF No. 8-2)—that show that the Florida dealership sold the Vehicle on June 16, 1998 to a customer in Florida. (ECF No. 8-2 at 1–2; ECF No. 15-1 at 13; *see also* ECF No. 8 at 3.) The Vehicle was then resold in Florida on at least three separate occasions before it was purchased by Plaintiff in Florida on April 5, 2013. (*See generally* ECF No. 15; *see also* ECF No. 8-2 at 3; ECF No. 8 at 3.) Plaintiff then brought the Vehicle to Colorado in or around August 2015. (ECF No. 8-2 at 3–4; *see also* ECF No. 8 at 3.)

In her Response, Plaintiff does not dispute these factual allegations. (*See generally* ECF No. 17.) Nor does Plaintiff present an affidavit or otherwise provide any allegations to the contrary.[2] As a result, the Court finds it to be undisputed that the Vehicle was (1) designed, developed, and assembled in Michigan; (2) sold by Ford to a dealership in Florida; (3) resold several times before it was purchased by Plaintiff in Florida; and (4) transported from Florida to Colorado by Plaintiff in or around August 2015.

---

[2] Rather, Plaintiff appears to tacitly concede in her Response that the Vehicle was originally sold to the Florida dealership and that she did not purchase the Vehicle from Ford in Colorado. (*See* ECF No. 17 at 5, 7–9.)

8

3. Application

In order to determine whether Plaintiff's injuries arose out of Ford's forum-related activities, the Court finds it beneficial to first analyze the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). *Bristol-Myers* was a mass action (not a class action) "consisting of 86 California residents and 592 residents from 33 other States" who had taken Plavix, a drug manufactured and sold by the defendant. *Id*. at 1778. The California Supreme Court held that specific jurisdiction over the defendant was appropriate in California even as to the claims brought by the non-resident plaintiffs. *Id*. at 1778–79. The Supreme Court (8-1) reversed as to the non-resident plaintiffs. *Id*. at 1781–84.

The starting point for the Supreme Court's analysis was this summary of the basic principles of specific jurisdiction:

> In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*. In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. . . . When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.

*Id*. at 1780–81 (internal quotation marks and citations omitted) (alterations incorporated) (emphasis in original). Thus, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*. at 1780 (internal quotation marks omitted).

In discussing whether there was "any adequate link between the State and the nonresidents' claims," the Supreme Court highlighted how "the nonresidents were not

9

prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id*. at 1781. In this light, the Supreme Court found that there was not an adequate link, noting: "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id*. Specific jurisdiction was therefore unavailable as to the nonresident plaintiffs. *Id*. at 1782.

Against this backdrop, the Court finds that specific jurisdiction over Ford is likewise unavailable to Plaintiff here, as there is not a sufficient connection between Ford's activities in Colorado and Plaintiff's claims—put differently, her injuries did not arise out of Ford's forum-related activities. Plaintiff's claims revolve around the design, manufacturing, distribution, and sale of the Vehicle. (*See generally* ECF No. 1.) However, it is undisputed that Ford did not design or manufacture the Vehicle in Colorado, but in Michigan. Moreover, Ford did not distribute the Vehicle to a dealership in Colorado, but rather to one in Florida (where it was sold and then resold several times before it was finally acquired by Plaintiff in Florida). Similarly, Ford did not sell—and Plaintiff did not purchase—the Vehicle in Colorado, but in Florida. The Vehicle was then subsequently brought from Florida to Colorado by Plaintiff—not Ford. On this record, the Court perceives no rational basis upon which it can conclude that Ford's challenged conduct had any connection whatsoever with Colorado. *See Walden v. Fiore*, 571 U.S. 277, 289 (2014); *cf. Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456–57 (10th Cir. 1996) ("the requirement that the claim arises out of or results from the forum-related activities, is not satisfied when the plaintiff would have

suffered the same injury even if none of the defendant's forum contacts had taken place.") (alterations incorporated) (internal citations quotation marks omitted).

The Court recognizes that, unlike the nonresident plaintiffs in *Bristol-Myers*, Plaintiff is a resident of the forum State where she was injured. However, *Bristol-Myers* provides significant guidance on this matter. In particular, the Supreme Court in that case analyzed its previous holding in *Walden* during its discussion on how specific jurisdiction requires a "connection between the forum and the specific claims at issue." *Bristol-Myers* 137 S. Ct. at 1781–82. In *Walden*,

> Nevada plaintiffs sued an out-of-state defendant for conducting an allegedly unlawful search of the plaintiffs while they were in Georgia preparing to board a plane bound for Nevada. [The Supreme Court] held that the Nevada courts lacked specific jurisdiction even though the plaintiffs were Nevada residents and "suffered foreseeable harm in Nevada." Because the "*relevant* conduct occurred entirely in Georgia the mere fact that this conduct affected plaintiffs with connections to the forum State did not suffice to authorize jurisdiction."

*Id*. (internal citations omitted) (alterations incorporated) (emphasis in original).

The Supreme Court then noted that "the connection between the nonresidents' claims and the forum is *even weaker*" in *Bristol-Myers* than in *Walden* because the nonresident plaintiffs "*are not California residents and do not claim to have suffered harm in that State*." *Id*. at 1782 (emphasis added). The Supreme Court noted that, in both cases, the forum States lacked specific jurisdiction because "all the conduct giving rise to the [plaintiffs] claims occurred elsewhere." *Id*.

Thus, the fact that Plaintiff is a resident of the forum State where she was injured is not by itself a sufficient link between the forum and Plaintiff's claims for specific

jurisdiction to be present in this case.[3] *See id*. at 1781–82. Rather, it shows that Plaintiff's connection between her claims and the forum is closer to that of the plaintiffs in *Walden*. *See id*. at 1781–82. But even in *Walden*, the Supreme Court found that because the defendant's "relevant conduct occurred entirely in Georgia, . . . the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291. Similarly here, because all of Ford's conduct giving rise to Plaintiff's claim occurred in other forums—and not in Colorado—the Court lacks specific jurisdiction.

In sum, Plaintiff has not demonstrated that her injuries arose out of Ford's forum-related activities, and therefore she has failed to make a *prima facie* showing of personal jurisdiction to defeat the Motion. Accordingly, the Court need not consider whether Ford purposefully directed its activities at residents of Colorado, nor whether the exercise of personal jurisdiction over Ford would offend traditional notions of fair play and substantial justice. Because Plaintiff has failed to make a *prima facie* showing of personal jurisdiction, the Court will grant the Motion and dismiss this case without prejudice. *See Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002) (holding that a dismissal for lack of personal jurisdiction should be without prejudice).

---

[3] The Supreme Court noted in *Walden* that "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 290.

## C. Jurisdictional Discovery

In her Response, Plaintiff requests that she be allowed to conduct jurisdictional discovery if the Court finds that it does not have personal jurisdiction over Ford. (ECF No. 17 at 15.)

Plaintiff bears the burden of demonstrating a legal entitlement to such discovery. *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010). Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). The Court, however, "is vested with broad discretion and should not be reversed unless discretion is abused." *Id*.

The Tenth Circuit has held that "a refusal to grant jurisdictional discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant and that prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Breakthrough*, 629 F.3d at 1189 (internal quotation marks omitted) (alterations incorporated).

Plaintiff has not articulated in any way what facts could be obtained through jurisdictional discovery that would change the Court's ruling on the Motion, or how she would be prejudiced if such discovery was not permitted. (*See* ECF No. 17 at 15.) Rather, Plaintiff merely asserts: "This case is in its preliminary stage and discovery has not commenced." (*Id*.) That is not enough for the Court to grant Plaintiff's request.

13

Moreover, on the record before the Court there do not appear to be any "pertinent facts bearing on the question of jurisdiction" that are controverted. *Breakthrough*, 629 F.3d at 1189. Nor does this appear to be a case "where a more satisfactory showing of the facts is necessary." *Id*. In any event, Plaintiff does not argue that either of the propositions are present. Accordingly, Plaintiff has failed to demonstrate that she is entitled to jurisdictional discovery.

Although more is surely not needed in this regard, an alternative basis for the denial of Plaintiff's request is the fact that it violates this District's Local Rules and the undersigned's Revised Practice Standards. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."); WJM Revised Practice Standard III.B ("All requests for the Court to take any action, make any type of ruling, or provide any type of relief must be contained in a **separate**, written motion. A request of this nature contained within a brief, . . . or other written filing does not fulfill this Practice Standard." (emphasis in original)).

Because Plaintiff has failed to demonstrate that she is entitled to jurisdictional discovery—and since her request was made in her Response and not in a separate motion—Plaintiff's request for jurisdictional discovery is denied.

## IV. CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

1. Defendant Ford's Motion to Dismiss (ECF No. 8) is GRANTED;

2. Plaintiff Lorelle Thompson's claims (ECF No. 1) are DISMISSED WITHOUT PREJUDICE pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction;

3. Plaintiff Lorelle Thompson's request for jurisdictional discovery (ECF No. 17 at 15) is DENIED;

4. The Clerk of the Court is DIRECTED TO TERMINATE this action; and

5. Each party shall bear her or its own attorneys' fees and costs.

Dated this 24th day of September, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge